MRS. ANN E. TYRUS *v.* KANSAS CITY, FT. SCOTT & MEM-
PHIS RAILROAD COMPANY.*

(*Jackson.* April Term, 1905.)

1. **VERDICTS.** May be directed by the trial judge where the
facts are uncontroverted and there is no doubt as to conclus-
ions to be drawn therefrom.

Where there is no controversy as to any material facts, the trial
judge may instruct the jury to return a verdict in accordance
with his view of the law applicable to such ascertained or un-
controverted facts; but there can be no constitutional exercise
of the power to direct a verdict in any case in which there is a
dispute as to any material evidence, or any legal doubt as to
the conclusion to be drawn from the whole evidence, upon the
issues to be tried. (*Post, pp.* 583-595, and especially *pp.* 593, 594.)

Constitution cited and construed: Art. 6, sec. 9.

Cases cited and approved: Bacon v. Parker, 2 Ov., 57; Lannum
v. Brooks, 4 Hay., 121, 123; Claxton v. State, 2 Hum., 181, 183;
Johnson v. State, 2 Hum., 283; Ivey v. Hodges, 4 Hum., 154,
155; Graham v. Bradley, 5 Hum., 476, 479; Farquhar v. Toney,
5 Hum., 502, 503; Patton v. Allison, 7 Hum., 335, 336; Hughes v.
State, 8 Hum., 75, 78, 79; Kirtland v. Montgomery, 1 Swan,
452, 458; McGavock v. Wood, 1 Sneed, 185; Marr v. Marr, 5
Sneed, 388, 389; Whirley v. Whiteman, 1 Head, 616, 617; Ayres
v. Moulton, 5 Cold., 154; Ellis v. Spurgin, 1 Heis., 76; Lyon v.
Guild, 5 Heis., 177; James v. Brooks, 6 Heis., 158; Railroad v.
Campbell 7 Heis., 260; Insurance Co. v. Sturges, 12 Heis., 339,
343; Harington v. Neely, 7 Bax., 442; Crabtree v. State, 1 Lea,
267-270; Robinson v. Railroad, 2 Lea, 594; Gregory v. Underhill,
6 Lea, 207, 211; Jones v. Iron Co., 14 Lea, 157, 158, 159; Cantrell
v. Railroad, 90 Tenn., 638; Hopkins v. Railroad, 96 Tenn., 409,
443, 447, 456; Greenlaw v. Railroad, 6 Cates, 187.

* For rights as to flow of surface water, see note to Gray v.
McWilliams (Cal.), 21 L. R. A., 593.

Tyrus v. Railroad.

2. **SURFACE WATER.** Facts to show it was gathered and thrown in greater force on plaintiff's land.

In an action for injuries to land caused by gathering surface water in a body and sending it through a culvert upon the land, the facts stated in the opinion were held to show that the defendant railroad company gathered the surface water that came upon its property into a body in its culvert and sent it in greater volume and with greater force than it was accustomed to flow upon the land of the plaintiff, and thereby injured it. (*Post, pp.* 581, 582, 595.)

3. **SAME.** Same. Liability in damages for gathering and throwing water upon land of another.

Where the defendant gathers the surface water that comes upon his land into a body in a culvert and sends it in greater volume and with greater force than it was accustomed to flow upon the land of the plaintiff, he is liable for the damages so caused. (*Post, p.* 595.)

4. **SAME.** Same. Same. Damages upon the basis of permanent injury for overflowing land, when.

In an action against a railroad for injury to land by the unlawful diversion of surface water upon the land by gathering it together in a culvert by the means of the lay of the land and the elevation of the roadbed, and throwing it in greater volume and with greater force than it was accustomed to flow upon plaintiff's land, the plaintiff is entitled to prove the extent of the impairment of the value of the property for the purpose of assessing damages upon the basis of permanent injury. (*Post, p.* 595.)

Case cited and approved:    Coleman v. Bennett, 111 Tenn., 705, 714, 715, et seq.

---

FROM SHELBY.

---

Appeal from the Circuit Court of Shelby County.— J. S. GALLOWAY, Judge.

EDGINGTON & EDGINGTON, for plaintiff.

C. H. TRIMBLE, for defendant.

MR. JUSTICE NEIL delivered the opinion of the Court.

This action was brought to recover damages for an injury alleged to have been inflicted by the defendant upon a lot belonging to the plaintiff by gathering surface water in a body and sending it through a culvert upon the lot referred to, whereby it was permanently injured.

The facts shown by the record are, in substance, as follows:

The plaintiff is the owner of lot No. 7, in block 61, in Ft. Pickering Addition to Memphis. This lot fronts north on Iowa avenue, and runs back south to an alley, and has a front of 45 feet and a depth of 177 1-2 feet. On the east lies lot No. 6, belonging to the Calhoun estate, and on the west lot No. 8, belonging to Mrs. Coffey. Lots 6 and 8 were originally higher ground than lot No. 7, and have within the last few years been made even higher by "grading up," as it is called, or filling them. Just west of block 61 lies Kansas avenue, running north and south. Along the avenue runs the defendant's line of railway. A few years ago the defendant constructed across Kansas avenue, under its track, just opposite the mouth of the alley before referred to, a stone culvert sixty feet long, and of a diameter four feet by two and one-half feet. Owing to the lay of the land, the culvert resting at the lowest place, and the obstruction,

which the elevation of the road bed thrown up by the defendant offers to the passage of water, the culvert receives the drainage of about fifty-eight acres of land, and pours this water in one body into the alley above mentioned, and thence upon the plaintiff's lot, striking that lot at its south end, and running thence, northward, through the whole length of the lot to its northern margin where it escapes into a drain constructed by the city across Iowa avenue, with the result that through the erosive action of the water a gully six or seven feet in depth, and very wide, has been opened through the entire length of the lot, and nearly the whole surface washed off, rendering the lot practically worthless. Before the culvert was constructed, water from the surrounding lands passed over the plaintiff's lot, but more slowly, and not in such concentrated volume. It does not appear that the raising of lots 6 and 8 has had any appreciable effect in producing the injury complained of, but that the injury has been caused by the concentration of the water by means of the culvert. The culvert was properly constructed as a work of mechanical art, and as stated, was placed at the lowest level of the land, for purposes of surface drainage.

The plaintiff offered to show the extent to which the market value of the land had been impaired by the ditch before referred to, but was not permitted to do so, the evidence having been held incompetent by the court below.

The case was originally tried before a justice of the

peace of Shelby county, resulting in a judgment of $499 for the plaintiff. From this judgment an appeal was taken to the second circuit court of the county, and, on the trial in that court, his honor, Judge Galloway, gave the following charge to the jury:

"Gentlemen of the jury:

"This is an action brought by the plaintiff against the defendant railroad company to recover damages on account of defendant having committed a nuisance by improperly draining surface water upon the premises of plaintiff.

"The court charges you that the proof shows that the culvert in question, under the tracks of the defendant company's railroad, which was constructed for the purpose of carrying off the surface water and natural drainage, was properly constructed for that purpose—that it was constructed at the lowest point of natural surface water drainage of the adjacent land—and that no proof to the contrary has been submitted to the jury. You are therefore instructed by the court to return your verdict for the defendant."

In obedience to this instruction, the jury returned a verdict in favor of the defendant, and judgment was rendered thereon by the court against the plaintiff for the costs of suit, from which judgment she has appealed and assigned errors.

1. The first point made is that the court had no power, under our practice, to give a peremptory instruction to the jury.

The question suggested by this assignment has come before the court so frequently during recent years, by the action of the circuit judges in sending up verdicts based upon peremptory instructions, that we deem it advisable to trace the history, and declare the state, of our law upon the subject.

Article 6, section 9, of the constitution of 1870, reads:

"Judges shall not charge juries with respect to matters of fact, but may state the testimony and declare the law."

The same provision was contained in the constitution of 1834, and substantially the same provision in the constitution of 1796.

The question to be determined is whether the giving of a peremptory instruction to the jury is a violation of the foregoing constitutional provision.

Before taking up our cases, however, which bear directly upon the question, it will be found useful to state some general principles established by our authorities in respect of the relations existing, under our law, between the court and the jury.

It has been held that the provision quoted, "judges shall not charge juries with respect to matters of fact," means that they shall not decide upon the credit of witnesses; they shall not state in which scale there is a preponderance; they shall not inform the jury what conclusion of fact, from the evidence heard, they ought to draw. *Johnson* v. *State*, 2 Hump., 283, 36 Am. Dec., 322. See, also, for further illustration: *Ivey* v. *Hodges*,

4 Hump., 155; *Graham* v. *Bradley,* 5 Hump., 479: *Patton* v. *Allison,* 7 Hump., 335, 336; *Hughes* v. *State,* 8 Humph., 78, 79; *Farquhar* v. *Toney,* 5 Hump., 503; *Kirtland* v. *Montgomery,* 1 Swan, 458; *McGavock* v. *Wood,* 1 Sneed, 185; *Marr* v. *Marr,* 5 Sneed, 388, 389; *Ellis* v. *Spurgin,* 1 Heisk., 76; *Lyon* v. *Guild,* 5 Heisk., 177; *James* v. *Brooks,* 6 Heisk., 158; *L. & N. R. R. Co.* v. *Campbell,* 7 Heisk., 260; *Harington* v. *Neely,* 7 Baxt., 442; *Robinson* v. *L. & N. R. R. Co.,* 2 Lea, 594.

"They may state the testimony;" that is, the judge may say the witness has said so and so, or you have heard and remember the facts stated by him. If you believe all those facts to be true, the law thereon is thus and thus. *Claxton* v. *State,* 2 Hump., 181, 183. He may state the testimony at large, but is under no obligation to do so. *Lannum* v. *Brooks,* 4 Hayw., 121, 123; *Harington* v. *Neely,* 7 Baxt., 442; *Hughes* v. *State,* 8 Humph., 75, 79, par. 2.

"Declare the law" means that he is to charge the law arising upon the evidence. *Crabtree* v. *State,* 1 Lea, 267-270.

Upon the whole passage, the following occurs in *Ivey* v. *Hodges,* 4 Hump., 154, 155:

"This provision arose out of the jealousy with which our ancestors always looked upon any attempt on the part of the courts to interfere with the peculiar province of the jury—the right to determine what facts are proved in a cause—and to put a stop to the practice of summing up, as it was and is yet practiced in the courts

of Great Britain, and, in all probability, in the colonies before the Revolution, and which consists in telling a jury not what was deposed to, but what was proved. This, the framers of our constitution considered a dangerous infraction of the trial by jury and they prohibited it by express terms. 'Judges shall not charge with respect to matters of fact;' that is, shall not state to the jury what facts are proved. To do so is error, for which a case must always be reversed. But not being disposed to withhold from the jury any proper aid which the judges may be enabled to render them in every investigation, they have provided that they may state the testimony; that is, may, for the purpose of refreshing the memory of the jury, inform them what facts the different witnesses have deposed to, leaving them to judge of the truth thereof, and to draw their deductions therefrom."

The following principles are stated in *Whirley* v. *Whiteman*:

"In trials by jury the court is to decide questions of law, and the jury questions of fact. What are called mixed questions, consisting of both law and fact, as questions in respect to the degree of care, skill, diligence, etc., required by law in particular cases are to be submitted to the jury under proper instructions from the court as to the rules and principles of law by which they are to be governed in their determination of the case. The truth of the facts and circumstances offered in evidence in support of the allegations on the record must be de-

termined by the jury. But it is for the court to decide whether or not those facts and circumstances, if found by the jury to be true, are sufficient in point of law to maintain the allegations in the pleadings, and this must be done in one of two modes: Either the court must inform the jury, hypothetically, whether or not the facts which the evidence tends to prove will, if established in the opinion of the jury, satisfy the allegations; or the jury must find the facts specially, and then the court will apply the law and pronounce whether or not the facts so found are sufficient to support the averments of the parties." 1 Head, 616, 617.

We shall now direct our attention to the precise question in hand.

We had, prior to the last term at Nashville, no case in this State which formally approved the practice of giving peremptory instructions to juries; but there are cases in our reports, as far back as December term, 1844 (*Graham* v. *Bradley,* 5 Humph., 476; *Farquhar* v. *Toney,* 5 Humph., 502), wherein it appeared that the circuit judge gave peremptory instructions to the jury, and this court refused to reverse, stating as the ground of refusal, in substance, that, if such instruction was an invasion of the province of the jury, it was a harmless invasion in the particular case, since there was no controversy in the evidence, the correct conclusion had been reached, and no injury had been done. In *Jackson Insurance Co.* v. *Sturges,* 12 Heisk., 339, the question for

examination was whether a certain draft had been pre-
sented with due diligence. In discussing the charge of
the court, Nicholson, C. J., said: "It is true that, upon
a state of facts not controverted, it would have been the
business of the court to determine whether they consti-
tuted reasonable diligence or not; but when the facts are
disputed, and the testimony conflicting, the court can do
no more than state the general principles of law applica-
ble to the case, and leave the jury to apply them to what
they may determine to be the facts." Id., 343. *Jones &
Son* v. *Cherokee Iron Co.,* 14 Lea, 157, was a case in
which the circuit judge gave a peremptory instruction.
There was a controversy of fact in the record, and the
instruction was held erroneous. Upon an assignment
made to the findings of the court of referees, before
which tribunal the case had been tried on appeal, that
the report wrongfully fails to show that there were no
controverted facts, this court said:

"The plaintiff below excepts to this part of the report
because the referees fail to show the fact that there was
no disputed fact, and therefore no issue, and because
they fail to report that, even according to their own
showing, the defendants below were not entitled to any
abatement of the note. The object of the exception is to
make the point that the error of the charge is not suf-
ficient to reverse on, if it appears that the defendant has
no defense. This court has occasionally acted upon this
rule where the verdict and judgment were in favor of the
defendant, and it clearly appeared that the plaintiff

Tyrus v. Railroad.

could in no event be entitled to a recovery according to his own showing. . . . The reason why the decisions are all in cases where the judgment has been in favor of the defendants is, obviously, because the plaintiff's case is more readily reducible to a single point. The defendant may rely upon the weakness of his adversary's case, as well as upon his defenses proper, and it can rarely happen that his rights turn upon a single point. If, however, the case should occur that the defense was narrowed to a point, and was clearly not sustained by the proof, the same rule would no doubt be applied. The mere fact that all of our decided cases are of the class mentioned would not, therefore, be conclusive of the present case. . . . But no case can fall within the rule which is not perfectly clear." Id., 158, 159.

In *Cantrell* v. *Ry. Co.*, 90 Tenn., 638, 18 S. W., 271, a case of controverted facts, wherein this court held that the circuit judge acted erroneously in giving a peremptory instruction to the jury, the syllabus correctly states the substance of the decision, as follows: "For the court to direct the jury to return a verdict in favor of either party, where there is any conflict in the evidence is an invasion of the province of the jury, for which the case will be reversed."

In *Hopkins* v. *Railroad,* 96 Tenn., 409, 34 S. W., 1029, 32 L. R. A., 354, a kindred question was considered— whether the practice of demurring to the evidence existed in this State. In the course of the decision of that question the court incidentally discussed two other ques-

tions—the right of the trial judge to direct an involuntary nonsuit, and the right to give a peremptory instruction to the jury. In that discussion it was shown that the practice of directing an involuntary nonsuit prevailed in the following States, viz.: California, Connecticut, Delaware, Georgia, Iowa, Kentucky, Maine, Massachusetts, Michigan, Minnesota, Nebraska, Nevada, New Hampshire, New York, New Jersey, Ohio, Oregon, Pennsylvania, Rhode Island, South Carolina, Texas, and Wisconsin. It was shown that the practice of giving peremptory instructions, or directing a verdict, prevailed in the following states, viz.: Alabama, Arkansas, Illinois, Indiana, Iowa, Kansas, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, New York, New Jersey, North Carolina, Pennsylvania, South Carolina, Vermont, West Virginia, and Wisconsin. It was said in that case (page 456 of 96 Tenn., page 1040 of 34 S. W. [32 L. R. A., 354], citing *Bacon* v. *Parker*, 2 Overt., 57), that it had been decided that an involuntary nonsuit could not be entered in this State. In respect of the right to direct a verdict in this State, it was said (page 447 of 96 Tenn., page 1038 of 34 S. W. [32 L. R. A., 354.]) The Tennessee cases cited by counsel for plaintiff in error, in respect of the right of the trial court to direct a verdict, are not controlling in this case. These cases presented controverted questions of fact material to the settlement of the issue, which belong exclusively to the jury. Such were the cases of *Kirtland*

v. *Montgomery,* 1 Swan, 452; *Ayres* v. *Moulton & Read,* 5 Cold., 154; *Robinson* v. *R. R.,* 2 Lea, 594; *Gregory* v. *Underhill & Newson,* 6 Lea, 207; *S. E. Jones & Son* v. *Cherokee Iron Co.,* 14 Lea, 157; *Cantrell* v. *R. R.,* 90 Tenn., 638, 18 S. W., 271." It was shown also in this review that in many of the States the practice of demurring to the evidence was permitted, and the general result drawn from the examination of the authorities was that: "In every State of the Union the judge is allowed to withdraw a case from the jury whenever there is a destitution of any competent, relevant, and material evidence to support the issue, and this authority is exercised either by directing a verdict sustaining a demurrer to the evidence, or enforcing a compulsory nonsuit, as the practice may prevail in the particular State. This fact is incontestable, and is abundantly shown in the overflow of cases already cited." Page 443 of 96 Tenn., page 1037 of 34 S. W. (32 L. R. A., 354).

In that case it was held that the demurrer to the evidence was the method recognized in this State for the granting of relief in the situation outlined in the excerpt.

So the matter has rested in our reports since that decision was rendered at the December term, 1895, subsequent decisions constantly referring to and applying that case. Meanwhile, however, the court, especially during recent years, has had brought to it very frequently cases wherein the circuit judges had directed verdicts. Where there was any material controversy in the evi-

dence, the court has disposed of these cases by remanding for a new trial; where there was no material controversy, they have been settled on the principles laid down in *Graham* v. *Bradley, Farquhar* v. *Toney, Jackson* v. *Sturges*, and in the excerpt above copied from *Jones & Son* v. *Cherokee Iron Company*.

Finally, in the case of *W. B. Greenlaw, Administrator*, v. *L. & N. R. Co.*, 6 Cates, 187, 86 S. W., 1072, the question came again before the court. In that case, in an opinion prepared by Mr. Justice Wilkes, it was said:

"This court has had a number of cases before it in which the trial judge has, after a consideration of the entire record, directed the jury what verdict to return; and, although the court has not in express terms approved the practice, it has said in a number of cases that, if the trial judge has arrived at a correct conclusion, the verdict of the jury, and judgment of the court, based upon his instruction, will not be disturbed. *Graham* v. *Bradley*, 5 Humph., 476; *Farquhar* v. *Toney*, 5 Humph., 502; *Robinson* v. *Railroad*, 2 Lea, 594; *Gregory* v. *Underhill*, 6 Lea, 211; *Jones* v. *Cherokee Co.*, 14 Lea, 157. There are a number of cases in our books which seem to hold that the practice of directing a verdict does not prevail in Tennessee. Undoubtedly, in other jurisdictions, the weight of authority is that such a practice is proper, and conducive to the prompt and proper determination of legal controversies. Practically the same result is reached by a demurrer to the evidence, and it is difficult to see why the practice of directing a verdict is not war-

Tyrus v. Railroad.

ranted by reason, as much so as is the practice of demurring to the evidence. Indeed, in its practical application, it is more simple, direct, and easily understood, and better calculated to do justice. . . . The practice of demurring to the evidence was in disuse in this State for a long number of years, until quite recently, and now prevails quite generally, and we think, with beneficial results. In the practical application of the two modes of procedure, as we have before stated, directing the verdict appears to be the more direct and easily understood, and is not fraught with such summary results to the party demurring as is the case when the demurrer is not sustained. We think, however, that, whenever the jury is directed to return a verdict, it should be upon a consideration of the entire evidence in the case, and not upon any detached portion of such evidence."

The case last cited must be regarded as finally establishing the practice referred to which has been struggling for authoritative recognition for so many years.

That case, however, did not call for a statement of the limitations of the rule under our constitution, and that phase of the matter was not presented.

The following we conceive to be a sound statement of the matter within the restrictions of our constitution: Where there is no controversy as to any material fact, there is nothing for the jury to find; the question is then solely one of law for the court, and in such a case the court may instruct the jury to return a verdict in accordance with his view of the law applicable to such

114 Tenn—38

ascertained or uncontroverted facts. There can be no constitutional exercise of the power to direct a verdict in any case in which there is a dispute as to any material evidence or any legal doubt as to the conclusion to be drawn from the whole evidence, upon the issues to be tried.

As here stated, the rule is in accord with the substance and spirit of all our previous practice, and is but a harmonious part of a system. That is, if there is any dispute as to any material fact, the case must go to the jury; if there is no dispute as to such facts, the question is one of law for the court. If the case is one triable by the jury, the court below may set aside the verdict, on motion for new trial, if he deem the preponderance of the evidence to be against it. If he refuse to grant a new trial, and the case is brought to this court, and the decision here turns upon the facts, the judgment of the lower court will be permitted to stand, if there is any evidence in the record to support the verdict; if there is no evidence in the record to support the verdict, this court, will, upon proper assignment to that effect, reverse the judgment, and remand the cause for a new trial. In the latter aspect of the matter, on motion properly made in the court below for a peremptory instruction, and an improper refusal of it by the trial judge, this court would be enabled to dispose of the case finally, and thereby save to the parties and to the governmental agencies of the State the delay and expense of an additional trial, in the absence of any reversible error in rulings upon evidence or otherwise.

Tyrus v. Railroad.

In disposing of this question, we have deemed it useful to make a careful examination of all our authorities bearing upon the subject, and a reference to the more important of them, not only for our instruction, but in deference to the truth that the continuity of judicial thought is of the highest importance in every sound system of law, and the only rational basis for a true and natural development and improvement in principle and practice.

2. Although we have held that in a proper case the trial judge may direct a verdict, yet we think his honor, on the facts of the present case, improperly exercised that power. The facts stated in the beginning of this opinion show that the defendant gathered the surface water that came upon its property into a body in its culvert, and sent it, in greater volume and with greater force than it was accustomed to flow, upon the land of the plaintiff, and thereby injured it. The defendant had no right to do this, and for so doing became liable in damages for the infliction of the injury. See authorities cited in note 3, p. 595, 21 L. R. A.

3. The circuit judge erred in refusing to permit the plaintiff to prove the extent of the impairment of the value of the property for the purpose of assessing damages upon that basis. The injury being a permanent one, the damages should have been assessed upon that basis, once for all, rather than upon the theory of an injury to the use by recurrent acts which may be abated. This distinction is taken, and the subject fully discussed, in *Coleman* v. *Bennett,* 111 Tenn., 705, 714, 715, et seq., 69 S. W., 734, to which we refer.

Reverse and remand for a new trial.