LOIS HAM JONES and LOLITA HAM v. WILLIAM
A. SANDS, as proponent of the alleged Will of Austin
Leonidas Ham, deceased.—292 S. W. (2d) 492.

Western Section. December 2, 1953.

Petition for Certiorari denied by Supreme Court, March 3, 1954.

(1)

2

4

George McCormick and James Causey, Memphis, for contestants.

Leo Bearman and Robert Burton, Memphis, for proponent.

AVERY, J. This was a will contest, tried on the issue of devisavit vel non, the will purporting to be that of Austin Leonidas Ham. The case originated in the Probate Court of Shelby County and with proper procedure was certified to the Circuit Court of Shelby County, where the case was tried by the Honorable Floyd M. Henderson, Circuit Judge. The will was challenged on the grounds of mental capacity and undue influence, the undue influence alleged to have been exercised by William A. Sands and other members of the Seventh Day Adventist Church, to which church and its affiliate testator sought to devise and bequeath all his property.

A jury was impaneled, as provided by law, and at the conclusion of all the evidence, upon application of the proponents seasonably made, the trial court instructed the jury to return a verdict in favor of the will, and judgment was entered accordingly.

The parties will be referred to as plaintiffs and defendants according to their status in the trial court. The defendants filed a motion for a new trial, which motion was seasonably overruled and from the trial court's action in overruling their motion for a new trial, the

defendants have prayed and perfected their appeal to this Court, and have assigned error.

The will in question was executed on the 24th day of June, 1952, being signed "A. L. Ham", and witnessed by John W. Polk, Medical Doctor, E. E. Carmon, a minister and the local head or pastor of the Seventh Day Adventist Church, and William A. Sands, the scrivener and executor. The will was executed at the Kennedy General Hospital, where the testator was a patient at the time and where he continued until his death on August 14, 1952. It was admitted to probate in common form on August 27, 1952 and on September 8, 1952 the contesting petition was filed by Lois Ham Jones and Lolita Ham, the petition alleging that they were the children and only heirs at law of A. L. Ham. The case was finally disposed of in the lower court on April 3, 1953.

The defendants have assigned fourteen errors. All these assignments of error are aimed at (a) the mental capacity of the testator, (b) undue influence exerted upon the testator, (c) the action of the trial court in directing a verdict, (d) the refusal of the court to allow defendants to introduce documentary and oral testimony relative to the adjudication of insanity of the testator in 1940 by the Probate Court of Shelby County and his confinement in the Hospital for the Insane in North Little Rock, Arkansas, (e) that the court erred in sustaining the motion of proponents to strike the evidence of Lolita Ham with respect to the reasons why she had not visited her father, and particularly her statement or remark about his confinement in the Little Rock Hospital for the Insane.

With the assignments of error, consolidated as hereinabove set out, in the disposition of this case, it is neces-

sary that a short history of this family of the testator be related herein.

Austin Leonidas (A. L.) Ham is a Spanish-American War Veteran. He had been married at least three times and perhaps one other marriage, according to the testimony of Dr. Edward W. Pollard, his brother-in-law. The two daughters, contestants of his will, Lois Ham Jones and Lolita Ham, ages forty-four and forty-three respectively, were children of his first marriage. There was a separation from his first wife and daughters in Nashville, Tennessee, when Lois was three years of age and Lolita two years of age. Both of these daughters testify that he had not been a father to them and that he was a stranger in the sense of any relationship. Lolita had not seen her father since she was ten years of age and Lois had not seen him since 1938. The record does not reveal either of his marriages, that is the person to whom he was married, nor whether any of his wives were living at the time of his death and at the execution of the will, except one, Miss Myrtle Hunter, who was divorced and is a witness in this case. Evidently he lived separate from any of them who might have been living. His sister, the wife of Dr. Edward W. Pollard, lived at Hughes, Arkansas and he had a crippled brother, for Dr. Pollard refers to the fact that he would bring his wife and her crippled brother to see Mr. Ham. Mr. Ham was, or at least had been, a member or communicant with the denomination or church referred to as the Seventh Day Adventist. There appears to be no correspondence of any kind or communication of any consequence between any of his mentioned relatives and the deceased. There is nothing in the entire record to indicate that he entertained any particular affection for any of his relatives, except in a slight way for his divorced wife, Myrtle

Hunter. He had accumulated some real estate and personal property.

It is proper at this point to state that before the introduction of any testimony at the hearing in the Circuit Court on the issue of devisavit vel non, counsel for the proponents of the will stated to the court, in the absence of the jury, that in 1940 the testator, by proper order of the Probate Court of Shelby County, Tennessee was declared insane and placed in a hospital at Little Rock, Arkansas; that an order was entered in the Probate Court of Shelby County in 1941 decreeing and adjudging the restoration of all of the disabilities of the testator and declaring him of sound mind; that it was anticipated that some reference might be made to this record by counsel for the contestants during this hearing and that the decrees or orders of the Probate Court, properly certified were available for inspection by the trial court; objection would be made to any testimony seeking to permit, as evidence, the adjudication of insanity and any testimony of the unsound mental condition of the testator prior to the order or decree by which he had been legally restored to a sound mental status. After much argument and with the statement that the court would hear the parties later, the court made the following statement:

"It would not be proper for you to go behind the last adjudication of the Probate Court, in which that court found this man to be of sound mind. I think that's final and binding, and certainly should be, from the length of time elapsing from that date until the so-called date of the paper writing found here purporting to be this man's last will and testament. It's been eleven years ago in point of time; so it would be very remote for counsel to go behind that

time. So for both reasons I am of the opinion that that adjudication is final and binding, and that should be your starting point."

Exceptions were seasonably noted to that instruction of the court, by Mr. McCormick, attorney for contestants, whereupon the court remarked:

"Yes. Of course it follows that it will not be proper for you to state to the jury anything in connection with the question of insanity prior to this last adjudication."

At the request of Mr. Bearman the court permitted a certified copy of the decree of restoration to be filed with the record, so that the record would show that it was in the record when the court made that ruling.

The purpose of the insistence on the part of defendants to introduce, as evidence the above referred to adjudications of insanity and restoration is to obtain the shifting of the burden of proof, with respect to sanity, to the plaintiff, by creating a presumption of insanity of testator. Of necessity, the decree of restoration would have to be avoided, and the decree of insanity permitted, in order to raise such presumption.

In disposing of the assignments of error we will do so in what we consider to be the proper and orderly method, and in so doing the first question that presents itself to us is the determination of the correctness of the action of the trial court by refusing to let the referred-to defendants introduce evidence with respect to the validity of the decrees of the Probate Court of Shelby County, Tennessee entered in 1940 and 1941, respectively adjudicating the deceased to be insane and setting aside this adjudication by a decree of restoration. We think the

action of the trial court in this regard is correct. The principal objection raised to the action of the court with respect to the decree of restoration seems to be that the original or properly proven copies of the original affidavits or certificates of two reputable medical doctors are not available. The court permitted, for the sake of the record, a certified copy of the decree of restoration to be filed as a part of the record. That decree recites that the cause was heard upon the sworn petition of the deceased, which stated that his mind had been restored, and,

"upon the wrtiten certificates of Dr. Newman Taylor and Dr. Wallace Moore, reputable physicians, duly authorized to practice medicine in this state, and who have had at least five years actual practice, said certificates reciting that they have personally made physical and mental examinations of the petitioner and that in their opinion petitioner is restored in mind, and said certificates are on file in this cause and made a part of the record herein."

Upon such recitation in the decree it will be and is presumed that such certificates were before the court, in proper form and given the proper consideration at that hearing. To presume otherwise, and permit such proof, would be a collateral attack upon the decree which could not legally be made in this case in the court below or in this court. The principle is so universally recognized that there is no necessity for citations of authoriites. This being true the decree of insanity was properly rejected. With that decree entered and in force for such a long period of time prior to the execution of the will and death of the testator Ham, and the decree reciting complete compliance with the methods of restoration pro-

vided by law, no good purpose could be served to permit either physician or layman to give testimony respecting the mental capacity of the deceased prior to the date of the restoration decree. Thus all assignments of error in that regard are overruled and disallowed.

"It is always the province of the trial judge to determine for himself the competency or incompetency of evidence offered, and this power may sometimes embrace a finding of fact as a preliminary to his ruling." Hager v. Hager, 13 Tenn. App. 23.

■ It was proper for the restoration decree to be introduced and made evidence in the court below, for without that being done the court would have been compelled to have permitted proof of the decree of insanity.

Thus, the trial court cannot be put in error for making his ruling prior to the introduction of any testimony in the case. To have done otherwise would have greatly complicated the orderly introduction of the testimony and evidence, and left the parties and their counsel in such position as to have been compelled to offer testimony and evidence wholly incompetent.

■ ■ The right of contestants to have the issue of mental capacity submitted to juries in will contests must rest upon substantial or material evidence at the time the will was made and not upon "scintilla" or "glimmer" of evidence. Hammond v. Union Planters National Bank, 189 Tenn. 93, 222 S. W. (2d) 377; Cude v. Culberson, 30 Tenn. App. 628 629, 209 S. W. (2d) 506.

"The law does not require that persons shall be able to dispose of their property with judgment and discretion in order to make a conveyance. It is sufficient that they understand what they are about." Sizer's Pritchard on

Wills, Sec. 99; Hammond v. Union Planters National Bank, supra.

The evidence to warrant a trial court in submitting the issues in a case to the jury must be "material" and "substantial". Hammond v. Union Planters National Bank, supra; Cude v. Culberson, supra; Knoxville Traction Co. v. Brown, 115 Tenn. 323, 331, 89 S. W. 319.

In the case of Hammond v. Union Planters Nat. Bank, the Supreme Court, speaking of the action of the trial court in that case, said [189 Tenn. 93, 222 S. W. (2d) 380]:

"We find that the court adhered to the well considered rule that there must be 'material, substantial and relevant evidence' to show mental incapacity when the will was executed, and in the absence of it there is no issue for the jury, citing Jones v. Tennessee Central Ry. Co., 8 Tenn. App. 183, 193; 32 C. J. S., Evidence, sec. 1034; Fitch v. American Trust Co., 4 Tenn. App. 87, 94; Nashville, C. & St. L. Ry. v. Sutton, 21 Tenn. App. 31, 104 S. W. (2d) 834; Cude v. Culberson, 30 Tenn. App. 628; 209 S. W. (2d) 506. This Court has followed the same rule without exception as shown in cases too numerous to mention."

By "material" evidence is meant evidence that is material to the particular question in controversy upon the issues joined, which must necessarily enter into the consideration of the controversy, and by itself or in connection with other testimony be determinative of the case. Knoxville Traction Co. v. Brown, 115 Tenn. 323, 89 S. W. 319; Cude v. Culberson, 30 Tenn. App. at page 638, 209 S. W. (2d) 506.

"By 'substantial evidence' is meant 'such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion' ", so states Judge Anderson in the Cude v. Culberson case, 30 Tenn. App. at page 639, 209 S. W. (2d) at page 512, and cites many cases so defining the term "Substantial Evidence."

What evidence can the trial court legally consider upon a motion by one side or the other for a directed verdict in a will contest case? In his consideration of such a motion is he confined to the same rules as in other civil cases in which our constitution guarantees a trial by a jury in a court of law?

It is admitted that we did not have, by the Common Law jury trials of will contests. Such cases originated with the Ecclesiastical Courts and the right of jury trial in will contests is purely statutory. This statute is 164 years old, only amended one time and that 117 years ago, carried into the official Code of 1932 as Section 8110 and is as follows:

"The issue shall be tried by jury; and their verdict, and judgment of the court upon the validity of the will shall be certified to the county court to be recorded together with the original will, if established."

The Supreme Court said in the so recent Hammond v. Union Planters National Bank case after referring to the contention of counsel for both parties in that contest relative to the quantum of proof necessary to carry the case to the jury:

"But we pretermit any discussion of these decisions because in our opinion the same rule applies in contested will cases as in other civil cases. In other words the question of testator's alleged insanity 'is to be submitted to the jury on the preponderance

of evidence with consideration of the presumption in favor of sanity' " citing, Pierce v. Pierce, 174 Tenn. 508, 127 S. W. (2d) 791; McBee v. Bowman, 89 Tenn. 132, 14 S. W. 481; Pettitt's Ex'rs. v. Pettitt, 23 Tenn. 191.

While there is not the slightest doubt of the soundness of the above quotation, on a motion for directed verdict, does the Court consider all the evidence in the case or only the evidence most favorable to the party against whom the motion is made and the proper inferences to be drawn therefrom. In the recent case of Cude v. Culberson [30 Tenn. App. 628, 209 S. W. (2d) 511], the most distinguished and lamented Judge Anderson laid down the following rule, or declared the rule to be:

"This rule is that there can be no exercise of the power to direct a verdict in any case where there is a dispute as to any material evidence, or any legal doubt as to the conclusion to be drawn from the whole evidence, upon the issue to be tried."

He then cited the cases of Tyrus v. Kansas City, Ft. S. & M. R. Co., 114 Tenn. 579, 86 S. W. 1074. He then by reference stated that to be the so-called "scintilla rule."

Does the above approved rule include two separate and distinct determinations to be applied by the Court in his consideration of a motion for directed verdict? Shall the Court consider (1st) "Is there a dispute as to any material evidence"? That is evidence which he can consider on such a motion. Then after he has decided that there is or is not such a dispute looking only at the evidence properly considered upon such a motion, take the (2nd) look at all the evidence in the case and determine if there "is any legal doubt as to the conclusions to be drawn from the whole evidence, upon the issue to be

tried." Does the expression "whole evidence" mean that of all parties or only the "whole evidence" which is offered by the party against whom the motion is made together with all other evidence materially supporting the position of such party?

From the whole of the relevant, material and substantial evidence introduced by the party against whom the motion is made together with all other evidence in the case materially supporting the position of such party and all legitimate inferences of fact favorable to him which may be legally drawn from such evidence, disregarding all other countervailing evidence, can the party against whom the motion is made succeed, under the proper charge of the court, is the correct position of a trial judge in considering a motion for a directed verdict. Tyrus v. Kansas City, Ft. S. & M. R. Co., 114 Tenn. 579, 86 S. W. 1074; Smith v. Sloan, 189 Tenn. 368, 376-377, 225 S. W. (2d) 539, 227 S. W. (2d) 2; McMahan v. Tucker, 31 Tenn. App. 429, 216 S. W. (2d) 356, 360; Tennessee Central Ry. Co. v. McCowan, 28 Tenn. App. 225, 188 S. W. (2d) 931; Prudential Insurance Co. of America v. Davis, 18 Tenn. App. 413, 429, 78 S. W. (2d) 358, 368; Wildman Manufacturing Co. v. Davenport Hosiery Mills, 147 Tenn. 551, 249 S. W. 984, 985; Cude v. Culberson, supra; Hammond v. Union Planters National Bank, supra; Chapman v. Evans, 37 Tenn. App. 166, 261 S. W. (2d) 132, 135.

The case of Chapman v. Evans, from the Middle Section of the Court of Appeals of Tennessee, was decided March 27, 1953, certiorari denied by Supreme Court July 17, 1953 and the re-hearing denied by the Supreme Court on October 9, 1953. There was a dissenting opinion by Judge Felts, but the majority of the dissenting opinions both agree respecting the law applicable to consideration

of motions for directed verdict. In the majority opinion we find the following statement [37 Tenn. App. 166, 261 S. W. (2d) 133]:

"The applicable law is well stated in an opinion of this Court in the case of McMahan v. Tucker, 31 Tenn. App. 429, 216 S. W. (2d) 356, 360, where it is said:

" 'The principles applicable to directed verdicts have been so frequently announced that there can be no doubt as to the duty of this Court in considering the facts. The cases upon this subject are too numerous to be collated here. One of the latest and most concise statements upon this subject is found in the case of Tennessee Central Ry. Co. v. McCowan, 28 Tenn. App. 225, 188 S. W. (2d) 931: ''Upon the consideration of a motion made by defendant for directed verdict 'plaintiff is entitled to all legitimate inferences of fact favorable to him which may be reasonably drawn from the evidence tending to support the cause of action stated in his declaration'. Prudential Ins. Co. (of America) v. Davis, 18 Tenn. App. 413, 429, 78 S. W. (2d) 358, 368; and 'the trial judge should take the most favorable view of the evidence supporting the rights asserted by the party against whom the motion is made, and discard all countervailing evidence,' Wildman Mfg. Co. v. Davenport Hosiery Mills, 147 Tenn. 551, 249 S. W. 984, 985.'' ' ''

In the dissenting opinion we find the following statement:

"This evidence, though meager, was enough, in my opinion. To test whether this is true, or whether verdicts should have been directed for defendant Com-

pany, we must look to all the evidence, construe it most strongly in favor of plaintiffs, take as true that which supports their rights, discard all countervailing evidence, and allow all reasonable inferences from the evidence in their favor. Tyrus v. Kansas City, Ft. S. & M. R. Co., 114 Tenn. 579, 86 S. W. 1074; Smith v. Sloan, 189 Tenn. 368, 376-377, 225 S. W. (2d) 539, 227 S. W. (2d) 2.''

■ It will be observed that the term ''countervailing evidence'' is used in more than one of the foregoing references, and is also·used in several other late opinions. While the meaning of the expression ''countervailing evidence'' is obvious, perhaps it would be well to look at the meaning of the word ''countervail'', as defined by Webster. A synonym is ''neutralize'' and the definitions are: ''A countervailing power or value; an equivalent; equal match; to thwart or overcome by opposing force—to avail against; to underbalance.'' So after reviewing the definition of the ''countervailing evidence'' expression we come back to the rule that has been the guide for the courts throughout the years in this democracy of ours where differences of facts are to be determined by juries, we must look to all of the evidence, construe it most strongly in favor of the party against whom the motion is made, taking as true that which supports his rights, allow all reasonable inferences from the evidence in his favor, discarding all countervailing evidence. In other words ''the trial judge should take the most favorable view of the evidence supporting the rights exerted by the party against whom the motion is made, and discard all countervailing evidence.''

■ This rule applies, in this case, to both the question of mental capacity and undue influence. The jury

could have properly found the following facts and circumstances, concerning the mental capacity of, and the alleged undue influence exerted upon Ham to be that he was suffering from cancer to such an extent that he had become unable to speak above a whisper, unable to take food, such weakened physical condition that he could not walk, that he could not answer inquiries coherently concerning his family, that he was laboring under delusions of entry into the real estate business in Memphis, Jackson and Nashville, and that he had purchased an airplane and would fly between these points; that he was taking flying instructions and learning to fly, and so stated to his former wife on or about the 11th of May, 1952, the day he entered the hospital where he died; that his mind was wandering and flighty and he was unable to concentrate on any subject for any length of time; was not able to engage in normal conversation, and that these conditions continued from the time he entered the hospital until his death; that in the meantime he was taking opiates, codeine and morphine regularly beginning on about the 8th of June, 1952; that these drugs affected his mental condition; that he had to be fed intravenously the entire time he was in the hospital; that he was being worried by what he termed ''evangelists'', meaning Carmon and Sands; that he was being visited regularly by Carmon, from the time that Carmon learned that he was in the hospital until his death, and by Sands from the 24th of June until his death on the 14th of August; that he was not a devout church member and had not attended church to any extent in many years; that he was so weak in body and mind, even if he had mental capacity to know what he was doing, as that he was easily influenced and that the continuous association by Carmon, the minister,

and his prayers and discussions with respect to the old man making a will, exerted such influence as to replace the mental desires of Ham with the mental desires of Carmon, and from all the facts and circumstances in the case the jury could have properly inferred that the alleged testator was incompetent at the time he made the will, or if found to be incompetent that he was unduly influenced by entreaty and coercion to the extent that he had no power to exert his own desires and wishes.

The circumstances both before the making of the will and after the making of the will, as related by the proof offered by the contestants was competent to enable the jury to determine whether or not at the time of the making of the will the testator was mentally competent.

It was not necessary to have any direct testimony that at the moment the will was made the state of mind of the testator was such as that he was incompetent, if from the proven surrounding facts and circumstances the jury could have determined the state of the testator's mind at the moment he signed the will. In the above referred-to case of Hammond v. Union Planters National Bank, Chief Justice Neil, in answer to the contention made that the contestant is required to show incapacity at the very moment the testator signed the will to invalidate it said:

"The answer to this rather extravagant statement is found in the fact that the court did not go to this extreme. Moreover it is known that wills are being successfully contested on that ground without proof of the testator's state of mind at the moment he signed the will."

There is a conflict in the medical testimony in

this case, even if on the motion for directed verdict all of the medical testimony could have been considered (and we hold that it could not under the proper rule), but that only the medical testimony offered in behalf of the contestants, which was that of Dr. Pollard, was the proper medical testimony to be considered by the trial judge, together with only the parts of the other medical testimony which did not countervail that of Dr. Pollard.

Viewing the evidence which could be properly considered by the trial court on the motion by plaintiff for directed verdict, we are constrained to sustain the assignments of error by defendants respecting the mental capacity of the alleged testator and the alleged undue influence exerted upon him, and to hold that these were questions to be determined by the jury, under the facts of this case.

 This disposes of the assignments of error except that which relates to the action of the trial court in sustaining the motion of plaintiff by striking the statement made by the witness Lolita Ham to the effect that she did not visit her father because of the reports from the Insane Hospital at Little Rock concerning his violent condition. That answer was competent insofar as it undertook to explain or show a reason for her failure to give more attention to her father during the latter years, and on that ground, the statement having come on cross-examination, it was competent, but under the proper charge of the jury it could have had no ill-effect.

We are not holding that the will is valid or invalid, but we are holding, that, notwithstanding the fact that the eminent trial judge viewed the witnesses on the stand and heard the testimony of most of them,—some testimony being by deposition, he was in error in sustaining the

motion for directed verdict and should have let the case gone to the jury under his proper charge.

The case is therefore remanded to the Circuit Court of Shelby County, Tennessee there to be tried consistent with this opinion. The appellees and their sureties on their bond are taxed with the cost of this case in this Court, and all the cost in the lower court will be adjudged by that court on final disposition of the case. Judgment is rendered accordingly.

Swepston, P. J. (W. S.), and Carney, J., concur.