# MINNIE MAE ARP v. EDDIE MAE ARP WOLFE.
## —354 S. W. (2d) 799.

Eastern Section. November 20, 1956.

Rehearing Denied January 10, 1957.

Petition for Certiorari Denied by Supreme Court, June 7, 1957.

296

John S. Wrinkle, Chattanooga, for plaintiff in error.

McEwan & Walker, Chattanooga, for defendant in error.

HOWARD, J. This suit involves the contest of the purported will and codicil of William Arp, who died at Chattanooga, Tennessee, on March 7, 1955, at 79 years of age. The alleged will was executed by Arp on February 27, 1953, and the codicil was executed on January 4, 1955. Both the will and codicil were prepared by Mr. John S. Wrinkle, an Attorney of the Chattanooga Bar, and were witnessed by Mr. Wrinkle and Ray B. Slagle, a friend of the testator.

At the time of his death, Arp owned a one-fourth undivided interest in a five-room house and lot located at 1605 S. Hawthorne Street, in the City of Chattanooga, and a farm consisting of 103 acres, located on U. S.

Highway No. 27, about 2 miles south of Daisy, Tennessee. The house and lot were purchased by Arp and his first wife in 1913, and at the time of his death was assessed at $1600.00, and the farm which Arp purchased in 1934 for $2750.00 was assessed at $2100.00. Arp's first wife, the mother of his three married daughters, Eddie Mae Arp Wolfe, Alfreeda Arp Watson and Ruby Arp Stuart, died in 1932, and he married his second wife and surviving widow, Minnie Mae Arp, on June 8, 1940. In 1941 Arp obtained a divorce from Minnie Mae Arp on grounds of cruel and inhuman treatment, but they remarried on November 28, 1942, and thereafter lived together continuously as husband and wife until his death in 1955. There were no children by his second wife.

By the terms of the will Arp devised everything he had to his surviving widow, Minnie Mae Arp, who was named Executrix without bond, and by the terms of the codicil the testator gave to his three surviving daughters $1.00 each, and reaffirmed "the will as to its other provisions."

The will and codicil were probated in common form in the County Court of Hamilton County on March 16, 1955, the petition for probate reciting that Arp's estate consisted solely of the above described real estate, "assessed valuation $5400.00." Thereafter this contest was filed by one of the married daughters, Eddie Mae Arp Wolfe, the grounds of contest being (1) that Arp was of unsound mind when he signed the will and codicil, and (2) that he was induced to do so by the fraud and undue influence of Minnie Mae Arp, his surviving widow and proponent of the will and codicil.

At the conclusion of all the evidence introduced, the trial judge, upon proponent's motion, directed a verdict in favor of the will on the issue of fraud and undue influence, but overruled proponent's motion therefor on the issue of whether Arp was of unsound mind, and the trial resulted in a verdict by the jury against the will and codicil. The verdict was approved by the trial judge, and upon the overruling of proponent's motion for a new trial, this appeal in error was granted and perfected.

By assignments of error 1 and 2 it is urged that the trial court erred in overruling proponent's motion for a directed verdict and for a new trial, because there was no material evidence that the decedent was of unsound mind either before, at the time, or subsequent to the execution of the will and codicil, or that he ever at any time suffered from any psychosis.

■ In the consideration of these assignments of error, we are required to take the strongest legitimate view of all the evidence that supports the theory and contention of the contestant, disregard all evidence and inferences to the contrary, and if we find there was any material evidence to support the verdict, it must be sustained. Jones v. Sands, 41 Tenn. App. 1, 292 S. W. (2d) 492; Melody v. Hamblin, 21 Tenn. App. 687, 115 S. W. (2d) 237; Taylor v. Taylor, 14 Tenn. App. 101.

■ Only where one conclusion can be reasonably reached from all the evidence and inferences is it proper for a trial court to direct a verdict. Shuler v. Clabough, 38 Tenn. App. 333, 274 S. W. (2d) 17; Supreme Liberty Life Ins. Co. v. Pemelton, 24 Tenn. App. 576, 148 S. W. (2d) 1; Coca Cola Bottling Works v. Selvidge, 4 Tenn. App. 558.

■ The above rules govern in the trial of will contests as in other cases. Jones v. Sands, supra; Melody v. Hamblin, supra; Taylor v. Taylor, supra.

It was undisputed that during the latter years of the testator's life there existed a mutual feeling of dislike and distrust between his three daughters and their stepmother; that because they had been told by their stepmother they were not welcome in the home, they visited their father there only occasionally, but visited him frequently during the several times he was confined in the hospital; that in 1948 Arp deeded to his wife a onefourth undivided interest in the house and lot on Hawthorne Street, retaining a one-fourth undivided interest, and in April, 1949 he executed a will in which he gave to his wife their one-half undivided interest in said house and lot, and to his three daughters his 103 acre farm, conditioned upon their executing to his wife a deed to their one-half undivided interest in said house and lot; that in the event the daughters refused to execute said deed, he devised to his wife a one-half undivided interest in the farm, and that at the time the will in question was executed, the previous will was not mentioned nor was there any proof as to what disposition had been made of it; that in June, 1954 his daughter, Ruby Arp Stuart and her husband filed a suit in the Chancery Court against her father to have the title to the 103 acre farm vested in them, the bill alleging that she and her husband had been living on the farm since before her father purchased it in 1934, at which time, it was alleged, he orally gave the farm to them. This suit was still pending on the date of Arp's death on March 7, 1955.

■ While a review of the record shows there was considerable evidence indicating that Arp was of sound mind when he executed both the will and codicil, the record likewise shows, there was relevant material evidence to the contrary, and the jury undoubtedly concluded that this evidence of mental incapacity could not be ignored. This conflict in the evidence which is set forth and discussed at length in an unpublished portion of this opinion presented an issue for the determination of the jury, the triers of facts, whose function is to weigh the evidence and draw legal conclusions therefrom, and it was not error for the trial judge to refuse to direct a verdict in favor of the proponent of the will, or to refuse her motion for a new trial on grounds relied upon in the foregoing assignments which are, for reasons indicated, overruled.

■■ It has long been the rule in this state that the appellate courts will not disturb a jury verdict if supported, as here, by any material evidence. Hammond v. Herbert Hood Co., 31 Tenn. App. 683, 221 S. W. (2d) 98; White v. Seier, 37 Tenn. App. 437, 264 S. W. (2d) 241. Moreover, where there is material evidence on which a case should go to the jury, a verdict based thereon and approved by the trial judge will not generally be disturbed on appeal. East Tenn. Natural Gas Co. v. Pelts, 38 Tenn. App. 100, 270 S. W. (2d) 591; Act-O-Lane Gas Service Co. v. Hall, 35 Tenn. App. 500, 248 S. W. (2d) 398.

■ By the 3rd assignment the proponent contends that the trial court committed prejudicial error in admitting in evidence, over proponent's objections, the testimony of William H. Stuart, the grandson of the

testator, to the effect that in his opinion his grandfather was of unsound mind on the dates that the will and codicil were executed; that the testimony and conclusions of this witness should have been excluded because they were not supported by sufficient facts, and further that the testimony of this witness relating to the condition of his grandfather's mind on January 4, 1955, the date the codicil was executed, should have been excluded because the witness admitted that he had not seen his grandfather for several months prior thereto.

Regarding opinions of non-expert witnesses in a will contest, Phillips Pritchard on Wills and Estates, 4th Ed., says:

"As to all other witnesses, except attesting witnesses and physicians, the rule is that their opinions, considered merely as opinions, are not evidence; but having first stated the appearance, conduct, conversation, or other particular facts, from which the state of the testator's mind may be inferred, they are at liberty to state their inference, conclusion, or opinion, as the result of these facts. The propriety for doing this arises from the delicate nature of all investigations into the state of the human mind, and the difficulty of communicating the influences which mind produces upon mind, unless the witness may speak of inferences, impressions or conclusions. But after all, it is the facts which a witness details, the conduct which he describes, which chiefly and primarily constitute the testimony to be relied on; and the witness' opinions are entitled to little or no regard unless supported and warranted by the facts he states." Sec. 110, pp. 123, 124.

As will be observed from the quoted portions of Stuart's testimony, he not only described the physical appearance and mental condition of the testator over a long period of time, but also narrated circumstances of fact which laid the foundation, as required by the above rule, for expressing his opinion. Accordingly, this assignment of error is overruled.

■ Likewise we find no merit in the proponent's insistence that Stuart's testimony relating to the condition of the testator's mind on January 4, 1955, the date of the codicil, should have been excluded.

The record shows that Stuart on his direct examination made no reference to the testator's mental condition on said date, or to the codicil, and that the testimony in question was elicited on cross-examination by the proponent's attorney, who at the time made no question as to its relevancy.

■ As a general rule a party eliciting a statement from a witness cannot move to strike it because it proves unfavorable to him, even though inadmissible. 88 C. J. S. Trial, sec. 138, p. 282. Nor will an answer which is directly responsive to a question be stricken because it is not what counsel expected. 53 Am. Jur., Sec. 150, p. 137.

■ Nor do we find any merit in assignment 4 insisting that the trial court erred in admitting in evidence the following testimony of Mrs. Ruth Auerswald, a witness for the contestant:

"Q40 Well, I will ask you what occurred in the home the night—give us, to your best knowledge, the date that he was going to have his eye removed?

\* · \* \* \* \* \*

"A I can't give the date—it was some time before 1949. * * * That is when my baby was born—between the two children I have—and you can definitely put it between that time. That is all I can tell you.

"Q43 Would you explain to the court and jury what happened in the home that night? Was there any disturbance, or was he disturbed and who disturbed him?

"A Yes, Mrs. Arp called me to the home to check his blood pressure, and while I was there she was cursing Mr. Arp to make a will, and she used quite a bit of profanity.

"MR. WRINKLE: If Your Honor, Please, we object to that. That's at least four years before this will was executed.

"THE COURT: Overruled.

"MR. WRINKLE: We note an exception.

"Q44 Did she hurt his condition any with this fussing and cursing?

"A His blood pressure shot up to over two hundred, two hundred and thirty to be exact.

"Q45 Will you just tell in detail what went on there, and what she said, what she was wanting him to do?

"A As I said before, she was begging him to make a will. How she wanted it made, I don't know, but she used quite a bit of profanity. She upset the man until he was in, almost in a state of shock."

It is argued that the above testimony was not only incompetent but was highly prejudicial to the proponent

of the will, because the facts related occurred more than 4 years before the will was executed and long before there was any issue regarding Arp's mental incapacity.

The record shows that at the time the testimony in question was admitted, the issue of fraud and undue influence was still before the court and jury, and said testimony was competent on this issue, though the court subsequently directed a verdict thereon in favor of the will.

Assignment 5 complaining because the trial court permitted the contestant's witness, Mrs. Ruth Auerswald, to explain why she disliked the proponent of the will, is overruled. On cross-examination the proponent's attorney had elicited from this witness an answer to the effect that she disliked the proponent, and on re-direct examination she was permitted, over the proponent's objection, to explain her reasons. Under the circumstances, we think that the explanation was properly allowed. 58 Am. Jur., 574, p. 321; 70 C. J. Witnesses sec. 856, pp. 703, 704; 98 C. J. S. Witnesses sec. 420.

By assignment 6 the proponent complains because the trial court submitted to the jury contestant's issue No. 2 which reads as follows:

"Did William Arp have the testamentary or mental capacity when he executed the paper purporting to be his last will on February the twenty-seventh, nineteen and fifty-three, and the paper purporting to be the codicil thereto on January the fourth, nineteen and fifty-five?"

In support of this assignment it is argued that the Court should have separated the issues as to the will

and codicil, that the jury had no opportunity to make separate findings on these issues, and that by submitting the two issues jointly it confused the jury.

While the proponent's brief asserts that timely objection was made to submission of the above issue to the jury, we have been unable to find in the record where this was done, nor does the proponent's brief contain a citation to the page where the objection and the ruling of the Court may be found, as required by the Rules of this Court. Rule 11, subsec. 2.

It further appears that the trial judge gave a very comprehensive charge, in which the jury was instructed to determine the issue of the testator's mental capacity on the dates of both the will and codicil, and the fact that the jury returned a general verdict against both instruments after it had returned a verdict on the special issues, shows that the jury was not confused and that it fully understood the issues presented for its determination. Moreover, the appellate courts of this state will not reverse a judgment for error in procedure, unless it shall affirmatively appear that the error complained of affected the results of the trial. T. C. A. sec. 27-116, 27-117. And there is no showing that the alleged error did affect the results of the trial.

By assignment 7 the proponent complains because the trial court submitted to the jury contestant's issue No. 3, as follows:

"Did William Arp personally sign, or direct the signing of the codicil described above?"

Inasmuch as the jury found that the testator was mentally incompetent at the time the codicil was exe-

cuted, it is unnecessary for us to consider this assignment.

Next, under assignment 8, it is contended that the trial judge erred (1) in overruling proponent's motion to strike contestant's jury demand, and (2) in refusing to hear and determine the issues without the intervention of a jury.

It appears that the record of the proceedings in the County Court was certified to the Circuit Court on June 7, 1955, where proponent filed her declaration on June 10th, to which the contestant filed her plea on June 14th, neither party in the original pleadings demanding a jury trial. On June 22nd the contestant made a jury demand which was invalid, because it was neither the first pleading filed, T. C. A. sec. 20-1203, nor the first day of the term at which the case stood for trial. T. C. A. sec. 20-1204. A second jury demand was made by the contestant on Tuesday, September 6, 1955, following Labor Day, the first day of the term at which the case stood for trial, and on September 9th the proponent moved to strike this demand, which motion was overruled. Upon the trial of the case the proponent's motion to strike was renewed, but was again overruled, and it is argued here, as it was below, that the motion should have been sustained because the demand not having been made on the first day of the term, did not meet the requirements of the Statute. T. C. A. sec. 20-1204.

By Statute, T. C. A. sec. 55-101, 1932 Code, Sec. 7520, the first Monday in September, commonly called "Labor Day," is made a legal holiday, on which "all the public offices of this state may be closed and business of every

character, at the option of the parties in interest or managing the same, may be suspended.''

While a certificate of the Clerk of the Circuit Court shows that the minutes of the Court were open on the first Monday in September, 1955, with the Honorable Robert E. Cooper, Judge, etc., present and presiding, the certificate does not show that any business was transacted either by the Court or by the Clerk's office, nor was there any proof to this effect.

 It is a matter of common knowledge of which the Courts take judicial notice that all public buildings and public offices are, as a general rule, closed on Labor Day. That the Circuit Court Clerk's office was closed on said date is indicated by the following portion of Judge Cooper's order overruling the proponent's motion to strike the jury demand:

''* * *, the Clerk's office was closed so that it was impossible for defendant to make an entry on the trial docket on the first day of the trial term. This Court feels that the law does not require the impossible and that the defendant should not be deprived of her right to a jury trial by the fact that the Clerk's office observed a legal holiday.''

 We think that where the day for doing an act required by Statute falls on a legal holiday, on which the Clerk's office is closed, the performance of the act on the next succeeding business day meets the requirements of the Statute, and this assignment is overruled.

 Finally, assignment of error No. 9 complaining of the trial judge's refusal to allow proponent's attorney to cross-examine Dr. Sidney B. Wood generally and

specifically, will be overruled, because proponent's brief does not cite the page in the Bill of Exceptions where the matters complained of may be found as required by Rule 11(2) of the Rules of this Court.

It results that the judgment of the Circuit Court is affirmed, and the case will be remanded to the Circuit Court in order that the verdict and judgment may be certified to the County Court, to be entered of record. Costs accruing in this Court are adjudged against the proponent, and costs accruing below will remain as adjudged.

McAmis, P. J., and Hale, J., concur.