**In re Nora Elizabeth McGILL,**
**Plaintiff/Appellant,**

v.

**Elizabeth HENDRIX, Defendant/Appellee.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Aug. 18, 1995.

Application for Permission to Appeal
Denied by Supreme Court
Dec. 18, 1995.

Wm. Kennerly Burger, Murfreesboro, for appellee.

## OPINION

TODD, Presiding Judge, Middle Section.

Nora Elizabeth McGill (hereafter "the ward") has appealed from the judgment of the Trial Court which:

(1) Dismissed the petition of the ward to terminate guardianship.

(2) Denied the motion of the ward to execute a will.

(3) Dismissed contempt proceedings against Jean Vandala, Patsy Nabors and Pamela Biggs, but reaffirmed a previous injunction and restraining order regarding discussions with the ward and requiring approval of the conservator for "non-routine trips or activities."

(4) Ordered that no further petitions be accepted by the Clerk in behalf of the ward without the approval of the court.

In abbreviated form, appellant's issues are:

1. Denial of trial by jury demanded in petition.

2. Denial of opportunity to present all evidence.

3. Denial of right to execute a will.

4. Invalid service of process in original guardianship proceeding.

5. Order to Clerk to refuse petitions.

A brief review of this proceeding from its beginning is necessary for an understanding of the situation presented by this appeal.

The four volume, 368 page record is unusual and inconvenient for two reasons. (1) It contains no master index. The separate indexes in each of the four volumes must be searched to find a given document. (2) Documents are arranged in the volumes in reverse chronological order, i.e. the earliest document is last in volume three and the latest is first in volume one. In future appeals, the Trial Clerk is advised to obtain assistance from another Court Clerk who is familiar with preparation of appellate records.

Ralph Christian, Nashville, for appellant.

On December 6, 1989, William H. McGill filed a "Petition for the Appointment of Limited Guardian," exhibiting certificates of two physicians which certificates are not in this record.

The petition alleged in part:

Your petitioners state that the respondent, Nora Elizabeth McGill, suffered a mild stroke on October 25, 1989; that she suffers from cerebral palsy with considerable amount of osteoporosis of the spine; that respondent has a much pronounced speech impediment; that respondent has difficulty hearing; that the respondent has difficulty walking without assistance; and that because of the medication that respondent is required to take, she has difficulty remaining lucid and remembering her past transactions; and because it is very difficult for her to write, she signs her name to checks and documents and has anyone nearby to fill in the amounts and other information, and make her deposits whenever they go to her bank.

That the respondent, Nora Elizabeth McGill, is single and has never married. She is in Middle Tennessee Medical Center, Murfreesboro, Tennessee, at the time of this petition.

. . . .

The petition prayed:

... 4. That a guardian ad litem be appointed to represent the interest of Nora Elizabeth McGill and that service be accomplished by service upon said guardian ad litem as service upon respondent would be futile.

On the same date, a summons was issued to summon "Nora Elizabeth McGill or her Guardian Ad Litem." The return on said summons states:

I hereby certify and return, that on the 6th day of December, 1989, I accepted summons together with the complaint herein as follows: from the County Court Clerk.

Larry D. Brandon

Guardian ad Litem

On December 12, 1989; the Trial Court entered an order stating:

After hearing testimony of the guardian ad litem, Larry Brandon, and the sworn affidavits of two physicians, said affidavits being attached to the Petition filed herein, and also appearing in the recommendations of the guardian ad litem; and to the satisfaction of the Court that this is a case necessary for the appointment of Limited Guardians.

The Limited Guardians having Power of Attorney to act with the Respondent and is currently making investments, keeping books, and making tax returns for the Respondent therefore ask the Court to waive bond on the guardians.

It is therefore ordered, adjudged, and decreed that William H. McGill and Elizabeth A. Hendrix shall be appointed as limited guardians for Nora Elizabeth McGill, on their giving bond in the sum of $400,000.00, and William H. and Joe McGill are approved as sureties thereon.

The powers and duties of limited guardian, to the extent ordered by the Court, among others, may have the appropriate duties set forth by T.C.A. 34–4–102 and particularly such powers to deprive the respondent of the right to dispose of property, execute instruments, enter into contractual relationships, and make purchases except as hereto set forth:

Respondent shall have the right to vote, the right to make purchases and write checks on a special provided bank account up to a maximum of $100.00 per check for a total of $500.00 withdrawals, in each monthly banking period, to provide for her pleasure and well being; and these expenses, paid from this special bank account, shall not be accountable to the Court. The limited guardians have the right to withdraw this special account by sufficient proof that the special account is not being used for her health and welfare.

It is further ordered, adjudged, and decreed that the limited guardians be paid the actual cost necessary to perform their duties, i.e., transportation, phone, bookkeeping materials, mailing, etc., the Limited Guardians waive all labor charges for

performing the described duties. It appearing to the Court that Larry Brandon has rendered services to the ward and that he is entitled to a fee in the agreed amount of $350.00 for his services as guardian ad litem; aforesaid fees to be paid from the estate of Nora Elizabeth McGill, and cost of this cause to be paid by respondent.

On June 24, 1991, a petition was filed on behalf of the ward, asserting that the mandatory provisions of T.C.A. Section 34–4–108 were not complied with, and that the ward had recovered from whatever disabilities she might have previously suffered. The petition prayed for a termination of the guardianship.

On July 17, 1991, an order was entered reading as follows:

This cause came on to be heard upon the petition of the ward, the oral answers of the guardians and the guardian ad litem, the testimony of witnesses in open court, and the entire record in this cause, from all of which the Court finds that the petition is not well taken and should be dismissed.

On December 2, 1991, the guardians filed an affidavit requesting authority for a psychiatric examination of the ward.

On December 2, 1991, the Trial Judge authorized the examination.

On February 4, 1992, one of the guardians, William H. McGill, was relieved of further duty.

On April 16, 1992, the Trial Court entered an order stating:

This cause came on to be heard this 14th day of April, 1992, before the Honorable James Buckner, Judge of the County Court for Rutherford County, Tennessee, at Murfreesboro, upon the Temporary Restraining Order issued against Pam Biggs . . .

2. That the cause should be rescheduled for taking of all proof on May 13, 1992, at 9:00 a.m.; and,

3. That the guardian shall make the proper arrangements to have the Ward, Nora Elizabeth McGill, present in Court at 8:30 a.m., in order for her to confer with Ralph Christian, Attorney for Pam Biggs, as the said Nora Elizabeth McGill is the essential witness; and,

4. That the attorney for the guardian shall report to the Court by the end of the month of April, 1992, if the Ward has accustomed herself to the facility and is medically able to appear at the hearing of this cause; and, . . . .

On July 6, 1992, the Trial Court ordered:

1. That a permanent restraining order should issue against Pamela Biggs, instructing her not to interfere in any manner whatsoever with the duties of the Guardian, Elizabeth A. Hendrix, and the Guardianship of Nora Elizabeth McGill. This is a total and permanent restraining order against Pamela Biggs.

2. That the Guardian, Elizabeth A. Hendrix, is immune from interference by outside interests against the Guardianship of Nora Elizabeth McGill, whether it is by Ms. Biggs, Ms. Nabors, Ms. Vadala or anyone else.

3. That the authority of the Guardian, Elizabeth A. Hendrix, shall not be curtailed in any manner.

4. That the said Pamela Biggs is permanently enjoined from coming about the ward, Nora Elizabeth McGill. Pamela Biggs is permanently enjoined from talking or writing about things that operate to interfere with the Guardianship.

On February 12, 1993, the guardian filed the following affidavit:

Comes now, Elizabeth Hendrix, the duly appointed and qualified Conservator of Nora Elizabeth McGill and would respectfully show unto the Court the following:

That the ward continues to need a Conservator due to physical and mental disability.

That the ward is presently residing at the following address: Imperial Manor, 306 W. Due West, Madison, Tennessee, 37115

This statement is furnished to demonstrate to the Court the need for the continuation of the fiduciary's services.

On June 18, 1993, counsel for the ward filed a "Petition to Terminate Limited Guardianship," stating:

This Petition is filed pursuant to T.C.A. 34–4–113(a)(b) which states:

(a) A limited guardian appointed under this part may be discharged or have his duties modified if the court determines that the person is no longer a disabled person, or that the limited guardian has failed to perform his duties and obligations in accordance with the law, or has failed to act in the disabled person's best interest so as to warrant modification, or termination. **"The disabled person or an interested person on the disabled person's behalf may petition the court at any time for a termination or modification order under this section."** (Emphasis supplied.)

(b) A petition under subsection (a) if made by the disabled person may be communicated to the court by any means including oral communication or informal letter.

Petitioner would show unto the Court, she is fully capable, mentally and physically, of managing her own affairs without help or interference from her Guardian or anyone else, and that the limited guardianship made applicable to her situation, December 12, 1989, is no longer feasible, practicable or to be endured and should be terminated by this Honorable Court.

That since the **December 12, 1989 order, County Court, Rutherford County, Tennessee,** ordering limited guardians for Nora Elizabeth McGill, Petitioner has been examined by Dr. Ronald E. Wilson, Neurologic Consultants, P.C., 356 Building, Suite 105, 356 24th Avenue, North, Nashville, Tennessee 37203, and St. Thomas Medical Plaza, W., Suite 101, 4230 Harding Road, Nashville, Tennessee 37205, who, in his next-to-last paragraph, page 2, January 16, 1992 letter to petitioner's counsel, states:

My impression is that Mrs. McGill has congenital dystonic Choreiform cerebral palsy. At this time on bedside testing, **she has no significant cognitive impairments. The patient would in my best neurological judgment be competent to handle her own affairs at this time.** (Emphasis supplied.)

Petitioner would show Dr. Wilson's neurological examination post-dates more than two years the examinations furnished the Court by limited guardians. Petitioner makes Dr. Ronald E. Wilson's January 16, 1992 letter **Exhibit 1** to her petition and incorporates it herein by reference as though it were copied verbatim.

That on October 3, 1991, Petitioner was examined by Dr. Randy C. Fullerton, 2021 Church Street, Nashville, Tennessee 37203. In the concluding paragraph of his medical narrative, Dr. Fullerton's expert opinion re Petitioner was: "I believe this individual is capable of managing her own affairs in respect to business/financial and personal decisions. I find her to be in good physical and mental health on today's exam. I do not believe she needs a guardian at this time based on her exam today."

Later, December 9, 1991, Dr. Fullerton furnished an "**Addendum**" to his affidavit, stating: "I have received additional information since my initial evaluation of Mrs. Nora McGill. **While this information does not alter the findings of my recent examination,** it may reflect that this patient has shown poor judgment on occasion in the past." (Emphasis supplied.)

Dr. Fullerton's examination of Petitioner post-dates approximately a year and ten months examinations furnished the Court by limited guardians. Petitioner makes Dr. Randy C. Fullerton's December 10, 1991 affidavit, **Exhibit 2** to her Petition, incorporating it here by reference as though copied verbatim.

. . . .

On June 14, 1991, Petitioner was examined by Dr. Frank C. Carter, 1004 North Highland Avenue, Murfreesboro, Tennessee 37130. In a letter "To Whom It May Concern," Dr. Carter's opening paragraph states: "Ms. Elizabeth McGill was seen and examined by me today. **I believe that she is mentally capable of managing her own affairs.** I have had a medical license in the State of Tennessee since 1970 and have been in the active practice of medi-

cine in Murfreesboro since 1976." (Emphasis supplied.)

. . . .

**Premises Considered, Petitioner Prays:**

. . . .

2. Petitioner, pursuant to **T.C.A. 34–4–107(1)**, hereby demands a jury of twelve (12) good and lawful citizens of Rutherford County, Tennessee, try her cause on the issue of the degree of disability set forth in the December 12, 1989 order of this Honorable Court.

3. That pursuant to **T.C.A. 34–4–107(4)** it be mandatory that she be present at her trial and be brought to the courtroom and returned by Mr. Randy Smith, Nashville Chapter, United Cerebral Palsy.

4. That she be accorded all rights of a "respondent" under the **Limited Guardianship Act, T.C.A. 34–4–101, et seq.**

5. That following the trial of her cause, she be restored sui juris, to all the rights, privileges and powers of the citizenship she enjoyed prior to the imposition upon her of the **Limited Guardianship Act, December 12, 1989.**

On December 22, 1993, counsel for the ward filed a "Motion for Ward to Execute her New Will."

On January 10, 1994, the Trial Court entered an order permitting the ward to visit her attorney's office for the purpose of executing a will.

On April 14, 1994, the Trial Court entered an order stating:

... [T]he Court finds that it is in the best interests of the Ward to order an in-facility, extensive determination of the Ward's competency, as defined by the below summarized statutory standard. Accordingly, the Guardian shall make arrangements for the admission and transportation of the Ward to either a Vanderbilt University facility or Parthenon Pavilion facility (whichever can provide the appropriate evaluation at the earliest available date.)

2. It is Ordered that a complete and exhaustive evaluation be performed, directed toward ascertaining the level of mental and/or physical debilitation, if any, pres-

ently experienced by the Ward, Nora Elizabeth McGill. Specifically, it is directed that the facility conduct such tests as may be professionally determined to be appropriate for the purpose of ascertaining whether or not Nora Elizabeth McGill is a "disabled person" within the meaning of the statutory definition as outlined below:

" 'Disabled person' means any person the age of eighteen years or older determined by the court to be in need of partial or full supervision, protection and assistance by reason of mental illness, physical illness or injury, advanced age, developmental disability or other mental or physical incapacity;"

3. Consistent with the foregoing statutory criteria, the appropriate facility will prepare and file reports with the Guardian, with copies to be provided to Guardian Ad Litem and Mrs. McGill's asserted counsel, Ralph Christian, in order that either party may schedule depositions in a timely fashion prior to the scheduled hearing date. In the event those depositions cannot be scheduled by the designated date, the Court will entertain a request for a continuance of the matter pending the scheduling of a deposition. All other matters are reserved.

On July 20, 1994, a "Report of Physician" was filed.

On August 16, 1994, the Trial Court entered an order including the following:

On the 1st day of August, 1994, the Court has considered the following pending matters: (1) A "Petition to Terminate Guardianship" filed in behalf of the Ward, and the Petitioner/Guardian's "Motion to Dismiss"; (2) The Ward's motion to execute a will; (3) The contempt proceedings filed against Pamela Biggs, Jean Vadala, and Patsy Nabors, as well as a supplemental contempt motion filed against Jean Vadala; (4) The Guardian's motion for assessment of fees.

Upon consideration of the evidence, including the appearance and statement of the Ward Nora Elizabeth McGill, the Court finds as follows:

1. That the motion to dismiss the Ward's "Petition to Terminate Guardianship" is sustained, upon a finding by the Court that the only medical evidence presented in the matter, since the initial order of guardianship was entered establishes that the Ward remains incompetent, within the meaning of the statutory definition set forth. The Court finds that no material change in circumstances is alleged, or established by the evidence, presented in support of the petition to terminate the guardianship. Accordingly, the petition to terminate the guardianship is dismissed, with costs to the Petitioner or her surety. Although the original matter was presented to the Court as a Guardianship, the proceeding is clarified to reflect that the action, being brought for the protection of the interest of an adult, must be described as a conservatorship within the meaning of *Tennessee Code Annotated* § 34–13–101 et seq.

2. The Court finds that the Ward is not competent to execute a will, and the motion requesting that relief is herewith denied.

3. The contempt proceedings against Jean Vadala, Patsy Nabors, and Pamela Biggs are herewith dismissed, although the prior findings of the Court regarding fee assessments are affirmed. The previously entered injunction/restraining order is reaffirmed. However, the Ward may visit on the premises of Imperial Manor Nursing Home with whatever friends or acquaintances as she may choose. However, the Court enjoins Ms. Biggs, Ms. Nabors and Ms. Vadala, or any other person acting directly or indirectly in their behalf, from in any way interfering in the conduct of the Guardian's duties or authority. The Court reaffirms the finding of the July 19, 1992 order prohibiting any person from interfering with the authority of the Conservator or the conservatorship in dealing with the Ward. Specifically, those parties shall not discuss with the Ward the need to remove the conservatorship, nor shall they discourage her cooperation with the Conservator or her representatives. Any conduct of that manner shall be considered contemptuous of the orders of the Court.

The Ward shall not be removed from the premises without the express written authority of the Conservator. Any non-routine trips or activities involving the Ward shall be coordinated through, and approved by, the Conservator Elizabeth Hendrix.

. . . .

5. Due to the repeated efforts to challenge the pendency of the conservatorship, in both this Court and the Chancery Court of Rutherford County, this Court ORDERS that no further petitions shall be accepted by the Clerk of the Court, in behalf of the Ward/disabled person, unless those petitions are first presented to the Court for approval for filing, and unless the petition to terminate the conservatorship contains the statutorily required wording that a change in circumstances has occurred since the present hearing, and that allegation is supported by the statement of a licensed medical doctor, and in compliance with the statutory requirements. . . .

From the last quoted order, this appeal is prosecuted.

This proceeding originated under the authority of T.C.A. Title 34, Chapter 4, Part 1, which contained the following pertinent provisions:

**34–4–102. Definitions.** As used in this part, unless the context otherwise requires: . . .

(2) "Disabled person" means any person determined by the court to be in need of partial or full supervision, protection and assistance by reason of mental illness, physical illness or injury, advanced age, developmental disability or other mental or physical incapacity;

. . . .

(4) "Limited guardian" means any person appointed by the court to manage, supervise or protect a disabled person to the extent ordered by the court; . . . .

. . . .

**34–4–104. Petition for limited guardianship—Time limit for hearings.—** . . .
(c) The hearing on the petition shall be

held not less than seven (7) days nor more than sixty (60) days from the date of service on the respondent. The hearing may be extended on motion showing good cause.

**34–4–105. Service of petition—Notice to other relative or custodian.**—(a) The respondent shall be served personally with a copy of the petition. If the respondent is a minor, his parent or guardian shall also be served personally. If personal service on the respondent would be a futile act, the guardian ad litem shall be personally served....

**34–4–106. Appointment of attorney and guardian ad litem.—Duties.** (a) Within ten (10) days after the receipt of a petition for limited guardianship, if the respondent does not have an attorney of record, the court shall appoint adversary counsel to represent the respondent. In addition, if the court determines it advisable, the court may appoint a guardian ad litem, who may be a nonlawyer, to represent and protect the interest of the respondent.

(b) The adversary counsel and the guardian ad litem, if appointed, shall consult with the respondent as soon as practicable following appointment and, if possible, explain in language understandable to the respondent the substance of the petition, the nature of the proceedings, the respondent's right to protest the petition, the identification of the proposed limited guardian, the right to a jury trial as to the issue of his alleged disability, the right to be present at any hearing, and the right to appeal the final decision on the petition. To the extent practical, the adversary counsel shall involve the respondent in the proceedings.

**34–4–107. Rights of respondent.**—The respondent has the right to: (1) Upon demand by the respondent or his counsel, a jury trial on the issue of the degree of disability; (2) Present evidence and confront and cross-examine witnesses; (3) Appeal the final decision on the petition; and (4) Attend any hearing of petition, unless the respondent's counsel or the guardian ad litem shows good cause why the presence of the respondent would be harmful to the respondent.

**34–4–108. Examination by physician.**—(a) The court shall order a medical evaluation of the respondent unless the court determines that a medical evaluation performed for a disability hearing before a military service medical board is adequate. The court shall select such evaluator from a list of three (3) licensed physicians who are reasonably available submitted by the adversary counsel.

. . . .

**34–4–110. Findings of fact required—Appointment of limited guardian—Standby limited guardian.**—(a)(1) At the hearing the court shall determine if the respondent is a disabled person.... (2) If the court determines the respondent is a disabled person, the court shall determine the nature and extent of the respondent's disability and determine the extent to which a limited guardian is needed. (3) The court shall appoint a limited guardian, and the order of the court shall enumerate the powers removed from the respondent and shall enumerate the powers vested in the limited guardian. To the extent not specifically removed, the respondent shall retain and be able to exercise all powers of a person who has not been found to be a disabled person....

. . . .

**34–4–113. Termination or modification of powers of limited guardian.**—(a) A limited guardian appointed under this part may be discharged or have his duties modified if the court determines that the person is no longer a disabled person, or that the limited guardian has failed to perform his duties and obligations in accordance with the law, or has failed to act in the disabled person's best interest so as to warrant modification or termination. The disabled person or any interested person on the disabled person's behalf may petition the court at any time for a termination or modification order under this section. (b) A petition under subsection (a), if made by the disabled person, may be communicated to the court by any means, including oral communication or informal letter. (c)

The court, upon receipt of the petition filed under this section, shall conduct a hearing. At the hearing, the disabled person has all the rights indicated in § 34–4–107. (d) Upon conclusion of the hearing, the court shall enter an order setting forth the court's findings of fact. . . .

The quoted statutes were repealed by Chapter 794, Public Acts of 1992, effective January 1, 1993, and replaced by Chapter 11 of Title 34 of the Code, effective January 1, 1993, and relating to guardianships and conservatorships.

Proceedings prior to January 1, 1993, must be viewed in the light of the former statutes, quoted above. Proceedings since that date must be viewed in the light of the subsequent statutes.

*–Service of Process–*

■ The former statute provided for service of process upon a guardian ad litem if an attempt to serve the respondent would be "futile." The sworn petition so alleges, but alleges no fact supporting the conclusion under the circumstances. A proper procedure would have been to require an attempt to serve the respondent. If the return of the process indicated impossibility of satisfactorily communicating with respondent, a guardian ad litem should have been appointed and required to report to the Court his efforts to inform the respondent of the pending proceeding. This record contains no justification for dispensing with personal notice to the respondent of a proceeding to limit or deny her basic rights as a human being. Moreover, the record contains no evidence of the appointment of the guardian ad litem before he accepted service of process or efforts on his part to protect the rights of the ward to due process.

It has been held that an adjudication of incompetency without proper notice to the subject is void. 56 C.J.S. Mental Health § 29, p. 526; *State ex rel. Anderson v. Kirkland,* 227 Mo.App. 643, 55 S.W.2d 697 (1932).

It would be impractical to invalidate the appointment and actions of the fiduciaries at this late date. Nevertheless, this Court cannot recognize the conclusive effect of any adjudication of incompetency without adequate efforts to provide due process to the affected person.

■ The order appointing the limited guardians failed to adequately specify the powers or the "limitations" thereon. The order provided only:

The powers and duty of limited guardian (sic), to the extent ordered by the Court, among others, may have appropriate duties set forth by T.C.A. 34–4–102 and particularly to deprive the respondent of the right to dispose of property, execute instruments, enter into contractual relationships, and make purchases except as hereto set forth: (Here follows a list of limited privileges granted to respondent.)

Section 34–4–102 cited in the order and quoted above contains no designation of duties except subsection (4) which states that a limited guardian is one appointed to act "to the extent ordered by the Court."

The order of appointment authorizes no control of the person of the ward except the power "to deprive the respondent of the right to dispose of property (does this include execution of a will?) execute instruments, enter into contractual relationships (does this include employment of counsel?) and make purchases."

This record is devoid of any efforts on behalf of the respondent by the guardian ad litem. There are only his bills for services. It is the duty of a guardian ad litem to voice the desires and advocate the best interests of the ward. The record should reflect his efforts to represent his client.

■ There is no record of an open trial upon the merits of the allegation of incompetency before the original adjudication of incompetency. Although a court has authority to take temporary emergency measures to protect an alleged incompetent and/or his estate, this does not relieve the Court of the duty to see that the alleged incompetent is accorded prompt and full due process and adequate defense. This record does not show that such occurred before the original adjudication of incompetency. Especially significant is the absence of respondent from the original proceeding and the lack of any

finding of fact to justify proceeding in her absence.

This Court views the proceedings prior to January 1, 1993 as being inadequate to support any exercise of jurisdiction except actions to temporarily protect the estate of the respondent.

The proceedings subsequent to January 1, 1993, were erroneously instituted under a repealed statute. As recognized by the Trial Judge in his order, the new statute was controlling. Incidentally, the new statute contains no provision for service of process upon a guardian ad litem. The new statute, T.C.A. Section 34–11–106, 107, 125, 126 and 127, and 13–106, provides:

**34–13–106. Rights of respondent.**—The respondent has the right to:

(1) On demand by respondent or the guardian ad litem, a jury trial on the issue of disability;

(2) Present evidence and confront and cross-examine witnesses;

(3) Appeal the final decision on the petition;

(4) Attend any hearing; and

(5) Have an attorney ad litem appointed to advocate the interests of the respondent.

**34–13–107. Where conservator needed—Court order.**—If the court determines a conservator is needed, the court shall enter an order which shall:

(1) Name the conservator or conservators and in the court's discretion a standby conservator or conservators;

(2) Enumerate the powers removed from the respondent and vested in the conservator. To the extent not specifically removed, the respondent retains and shall exercise all powers of a person who has not been found to be a disabled person;

(3) If the rights and powers transferred to the conservator include management of the respondent's property, the order shall:

(A) Set the amount of the conservator's bond unless waived as authorized in § 34–11–105;

(B) Set the nature and frequency of each approved expenditure and prohibit the conservator from making other expenditures without court approval;

(C) Set forth the approved management of the disabled person's property; and

(D) Prohibit the sale of any property except as permitted by § 34–11–116(b) without prior court approval or as permitted in the property management plan approved by such order; and

(4) State any other authority or direction as the court determines is appropriate to properly care for the person or property of the disabled person.

**34–11–125. Attorney ad litem.**—(a) The court shall appoint an attorney ad litem to represent the respondent on the respondent's request, upon the recommendation of the guardian ad litem or if such appears to the court to be necessary to protect the rights or interests of the respondent. The attorney ad litem shall be an advocate for the respondent in resisting the requested relief. (b) The cost of the attorney ad litem shall be charged against the assets of the respondent. [Acts 1992, ch. 794, § 26.]

**34–11–126. Finding of disablement and need of assistance prerequisite for appointment of fiduciary.**—The court must find by clear and convincing evidence that the respondent is fully or partially disabled and that the respondent is in need of assistance from the court before a fiduciary can be appointed. [Acts 1992, ch. 794, § 27.]

**34–11–127. Least restrictive alternative to be imposed.**—The court has an affirmative duty to ascertain and impose the least restrictive alternatives upon the disabled person which are consistent with adequate protection of the disabled person and the disabled person's property. [Acts 1992, ch. 794, § 28.]

**34–13–106. Rights of respondent.**—The respondent has the right to: (1) On demand by respondent or the guardian ad litem, a jury trial on the issue of disability;

(2) Present evidence and confront and cross-examine witnesses;

(3) Appeal the final decision on the petition;

(4) Attend any hearing; and

(5) Have an attorney ad litem appointed to advocate the interests of the respondent. [Acts 1992, ch. 794, § 46.]

T.C.A. 34–13–108 provides for modification or termination of conservatorships as the facts require.

■ In the proceedings after January 1, 1993, the ward-petitioner was improperly deprived of her right to a trial by jury. Although the denial of a jury was upon the ground of a technical requirement of a local rule, the Trial Court erred in denying a jury under the circumstances.

Upon review of the entire record, this Court has determined that the only remedy for the present state of affairs is a proceeding equivalent to a new petition for appointment of a conservator; that the ward should receive actual service of process; that a guardian ad litem be appointed who is willing to and will accord to the ward full legal services of advice and representation of her wishes; that the ward be present at all proceedings except where forbidden by her supervising physician; that, if necessary or advisable examinations and hearings be held within the familiar surroundings of the ward's domicile under the supervision of a competent special master or commissioner; that a stenographic or equivalent record be kept of all proceedings, and that detailed findings of fact and conclusions of law be made by the Trial Court as to the competency and needs of the ward and the limits of authority and responsibility of any fiduciary that may be designated.

Although it cannot be conclusively found as a fact at this time, this record suggests that the ward is an aged person disabled by cerebral palsy, but that she is able to receive and understand written and audible communications and is able to respond in writing, but not in audible words understandable by an ordinary person. If this be true, it is understandable that the ward could be eccentric, even hostile, under given provocation, such as sudden exposure to strange surroundings and persons. If this be true, she needs compassionate accommodation and assistance rather than a cold adjudication of incompetency and loss of control of most aspects of her life without full due process. If she needs protection, it should be in the least obtrusive form consistent with her contentment and welfare.

■ As to the denial of permission to make a will, the order is vacated as moot. There can be no such thing as a prospective prohibition or permission to make a will. The capacity to make a will must be adjudged following the offer of probate of the will and must be determined as to the specific time the will was made. *In re Estate of Mays* (Tenn.App.1992), 843 S.W.2d 418; *Jones v. Sands*, 41 Tenn.App. 1, 292 S.W.2d 492 (1956); *American Trust & Banking Co. v. Williams*, 32 Tenn.App. 592, 225 S.W.2d 79 (1950); *Cude v. Culberson*, 30 Tenn.App. 628, 209 S.W.2d 506 (1947).

All injunctions relating to visitors' associations, and movements of the ward are vacated subject to the continuing power of the Trial Court to protect the ward and her estate from injury.

The order to the Clerk to refuse petitions is vacated subject to the continuing administrative authority of the Trial Court to consolidate and otherwise regulate pending litigation.

The foregoing is responsive to all of the issues raised by appellant.

The present guardian (conservator) will continue to administer the estate of the ward subject to the orders of the Trial Court.

The Trial Court will exercise its broad discretion and sound judgment in the restructuring of the pending litigation to recognize and preserve the rights of the ward. In particular, the Trial Court should afford the ward full opportunity to voice her desires as to who should represent her in future proceedings.

Costs of this appeal are taxed against the guardian to be paid out of the estate of the ward.

The cause is remanded to the Trial Court for further proceedings consistent with this opinion.

Reversed, Vacated and Remanded With Instructions.

CANTRELL and KOCH, JJ., concur.